**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**DUSTIN BEACH and**
**SHAWNA BEACH,**

**Plaintiffs,**

**v.** **Case No.: 4:26-cv-385-AW-MAF**

**CLAY HUFF, individually, and,**
**EDWARD VAZQUEZ, individually,**

**Defendants.**
**_____________________________________/**

# INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW

Individual Defendants, **CLAY HUFF** ("Huff") and **EDWARD VAZQUEZ** ("Vazquez") (collectively "Individual Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6) and N.D. Fla. Local Rule 7.1 move to dismiss Plaintiffs' First Amended Complaint (ECF 13) ("Complaint") with prejudice.

## INTRODUCTION and SUMMARY OF ARGUMENT

1. On August 10, 2026, Huff and Vazquez, with Florida Fish and Wildlife Conservation Commission's ("FWC") consent, removed the instant action to this Court. On August 28, 2026, Defendants Huff and Vazquez and FWC, respectively, filed motions to dismiss Plaintiffs' Initial Complaint. ECF Nos. 7 & 8. Thereafter, on September 17, 2026, Plaintiffs filed the operative Complaint. ECF No. 13.

Primarily, the Complaint dropped the claim raised against FWC and re-framed the claims against Individual Defendants.

2. Individual Defendants are certified law enforcement officers with FWC. Fairly summarized, Plaintiffs' allegations in the instant case stem from Vazquez' investigation of illegal hunting in the Twin Rivers State Park in 2022. During the course of that investigation Vazquez discovered a hunting camera that was registered to Plaintiff, Dustin Beach (herein after "D. Beach"). The photo and video evidence recovered from the camera ultimately led to Vazquez filing criminal citations against both D. Beach and Plaintiff Shawna Beach (hereinafter "S. Beach" and collectively as "Plaintiffs"). Those charges were dismissed in 2023 following Plaintiffs successful completion of pretrial diversion programs.

3. After the criminal proceedings were dismissed, D. Beach, purportedly unhappy with the charges, began a campaign of harassment against Vazquez. Over the following ten-month period, D. Beach filed false complaints against Vazquez and sent Vazquez a series of harassing and threatening text messages to his work-issued cell phone. D. Beach additionally sent a copy of an Office of Inspector General Investigation regarding Huff to Huff's wife and friends via Facebook Messenger. D. Beach continued to send the messages despite multiple requests from Vazquez' superiors and even the State Attorney to stop.

4. As a result, both Vazquez and Huff submitted Investigation Reports to the State Attorneys office in May of 2024. On May 23, 2024, an Information was filed, which included the reports as attachments, charging D. Beach with criminal felony counts of (1) witness retaliation (§ 914.23, Florida Statutes) and (2) corruption by threat (§ 838.021, Florida Statutes), naming Vazquez as the victim. That criminal case concluded with D. Beach pleading no contest to two lesser charges of Resisting Arrest without Violence, with adjudication withheld. D. Beach was sentenced to a collective two years of probation, with the additional special condition that he have no contact with Vazquez or his family. As of the date of the instant motion, D. Beach remains on probation for those crimes.

5. In the instant Complaint, D. Beach alleges that Huff, with the help of Vazquez, fabricated the allegations included in Huff's Investigative Report, that ultimately induced the State Attorney to file the 2024 criminal charges against him. D. Beach asserts that this conduct constitutes improper retaliation of his protected speech in violation of the First Amendment (Count I), Fabrication of Evidence in violation of his Fourth Amendment Rights (Count II), Malicious Prosecution in violation the Fourth Amendment and state common law (Counts III, V), Abuse of Process (Count VI), and Intentional Infliction of Emotional Distress (Count VII).

6. Separately, S. Beach alleges that during the 2022 criminal investigation Vazquez accessed her protected records from the Florida Department of Highway

Safety and Motor Vehicles for an improper purpose in violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2724 ("DPPA") (Count IV). She additionally alleges a derivative state common law loss of consortium claim as to both Individual Defendants (Count VIII).

7. All counts are due to be dismissed with prejudice. The basis for dismissal of each count is set forth in the chart below:

| Count | Claim | Plaintiff | Defendant(s) | Basis for Dismissal |
|---|---|---|---|---|
| I | First Amendment Retaliation, 42 U.S.C. § 1983 | Dustin Beach | Huff and Vazquez | Qualified Immunity based on Arguable Probable Cause |
| II | Fabrication of Evidence, Fourth Amendment, 42 U.S.C. § 1983 | Dustin Beach | Huff | Duplicative of Count III<br><br>Qualified Immunity based on Arguable Probable Cause |
| III | Malicious Prosecution, Fourth Amendment, 42 U.S.C. § 1983 | Dustin Beach | Huff and Vazquez | Qualified Immunity based on Arguable Probable Cause<br><br>No Bona Fide Termination in D. Beach's Favor |
| IV | Violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2724 | Shawna Beach | Vazquez | Failure to Establish Access of Information for Impermissible Purpose |
| V | Malicious Prosecution (Florida Common Law) | Dustin Beach | Huff and Vazquez | State Official Immunity (§ 768.29) |

| Count | Claim | Plaintiff | Defendant(s) | Basis for Dismissal |
|---|---|---|---|---|
| | | | | No Bona Fide Termination in D. Beach's Favor |
| VI | Abuse of Process (Florida Common Law) | Dustin Beach | Huff and Vazquez | State Official Immunity (§ 768.29)<br><br>Failure to Allege Improper Misuse of Process *After* Issuance |
| VII | Intentional Infliction of Emotional Distress (Florida Common Law) | Dustin Beach | Huff | State Official Immunity (§ 768.29)<br><br>Failure to Allege Sufficiently Severe Conduct |
| VIII | Loss of Consortium (Florida Common Law) | Shawna Beach | Huff and Vazquez | Derivative of State Claims, which Fail |

**WHEREFORE**, Individual Defendants respectfully request the entry of an Order dismissing Plaintiffs' Complaint with prejudice in its entirety together with such other and further relief as this Court deems just and proper.

# MEMORANDUM OF LAW[1]

## I. Consideration of Documents Incorporated into Plaintiffs' Complaint But Not Included as Attachments and Public Records is Appropriate in this Case

When analyzing a motion to dismiss under Rule 12(b)(6), the Court generally does not "consider anything beyond the face of the complaint and the documents attached thereto." *Fin. Sec. Assur. Co., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). One recognized exception to this rule however applies in cases—like the instant case—where "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Id.*; *see Gill as Next of Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019).

"A document is 'undisputed' if its authenticity is unchallenged." *Borislow v. Cannacord Genuity Gp., Inc.*, 2014 WL 12580259 at *1, n.1 (S.D. Fla. June 27, 2014) (quoting *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). A document is central to a plaintiff's claims where the plaintiff "unquestionably would have to offer a copy of the [document] in order to prove their case.'" *Fin. Sec. Assur. Co., Inc.*, 500 F.3d at 1284 (internal citations omitted).

[1] This Court is familiar with the standard of review for a motion to dismiss, accordingly, it will not be restated herein.

Plaintiffs incorporate by reference four separate documents. Specifically, Huff's March 6, 2023, email, Huff's May 1, 2024, incident report, Vazquez' April 26, 2024, incident report, and the May 23, 2024, Information filed in Plaintiff D. Beach's 2024 criminal case, which are attached as Exhibits 1, 2, 3, and 4, respectively. Plaintiffs do not contest the contents of each document, rather they rely on them to form the basis of their claims in the instant action, alleging that Individual Defendants' "misconduct is established through Defendants' own contemporaneous records, written investigative reports, and official court records." [ECF 13 at 2, ¶2]. Each is central to Plaintiffs' claims.

The complaint references Huff's March 6, 2023, email on three separate occasions. [ECF 13 at 2, ¶4; 6-7, ¶23; 17, ¶60]. Additionally, the Complaint identifies the email as evidence of Huff's improper motive alleging that it demonstrates Huff's "retaliatory animus." [ECF 13 at 2, ¶4]. Improper motive and retaliatory animus are an integral component of the allegations at the heart of Plaintiffs' case.

Huff's May 1, 2024, Incident Report, is referenced in the Complaint eleven times. [ECF 13 at 2, ¶3; 8-9, ¶¶29-31; 10, ¶35; 13, ¶47; 14, ¶38; 15, ¶52; 17, ¶60; 20, ¶73; 22, ¶85]. And, the Complaint characterizes the May 1, 2024, Incident Report and Huff's statements therein as the basis upon which the allegedly malicious felony charges were brought against D. Beach, making it central to Plaintiffs' claims. [ECF

13 at 20, ¶73 (noting that Individual Defendants were "the legal cause of the felony prosecution" by supplying the incident reports)].

Similarly, the Complaint also references Vazquez' April 26, 2024, Investigative Report seven times. [ECF 13 at 9, ¶32; 10, ¶35; 8, ¶28; 13, ¶47; 15, ¶53; 17, ¶59; 20, ¶73]. Like Huff's report, the Complaint also characterizes Vazquez' report as the cause of the 2024 criminal charges against D. Beach. [ECF 13 at 20, ¶73 (noting that Individual Defendants were "the legal cause of the felony prosecution" by supplying the incident reports)].

The May 23, 2024, Information filed in D. Beach's criminal case is referenced in the Complaint specifically on three occasions, and generally throughout as the felony criminal charges that were filed. [ECF 13 at 10, ¶33; 10, ¶35; 15, ¶53]. It is axiomatic that the charging document for the criminal prosecution that forms the basis of D. Beach's wrongful prosecution claims is central to the claims in this case.

Separately, it is also appropriate, and Individual Defendants request that the Court take judicial notice of the Information and other public records relating to D. Beach's 2024 criminal case. As explained above, Plaintiffs allege that Individual Defendants' misconduct is established, in part, by "official court records." [ECF 13 at 2, ¶2]. The Complaint additionally references other documents filed in D. Beach's 2024 criminal case. [ECF 13 at 11-12, ¶¶36, 40].

Documents related to D. Beach's 2024 criminal case are attached as Composite Exhibit 5. "[A] court may take judicial notice of matters of public record, including arrest warrants, and consider those facts in resolving a motion to dismiss." *Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1341 (M.D. Fla. 2017) (citing *McDowell Bey v. Vega*, 588 Fed. Appx. 923, 926 (11th Cir. 2014)); *Ardis v. Danhesisser*, No. 3:13cv366/MCR/EMT, 2014 WL 103232, at *6 (N.D. Fla. Jan. 10, 2014) (taking judicial notice of docket and pleadings in criminal case underlying plaintiff's malicious prosecution claims); *Rhodes v. Robbins*, No. 3:18-cv-673-J-34JBT, 2019 WL 1160828, at *8 (M.D. Fla. Mar. 13, 2019) (same).

On this same basis, Individual Defendants request that the Court take judicial notice of public records relating to the 2022 criminal charges brought against Plaintiffs, attached as Composite Exhibits 6 and 7. The charges relate directly to Vazquez' 2022 Investigation highlighted in the Complaint. [ECF 13 at 5-6, ¶¶16-21].

## II. Individual Defendants Are Entitled to Qualified Immunity as to the Federal Claims (Counts I, II, III)

D. Beach has brought claims for First Amendment Retaliation, Fabrication of Evidence (against Huff only), and Malicious Prosecution pursuant to 42 U.S.C. § 1983.

"Each official who asserts qualified immunity is entitled to an independent qualified-immunity analysis as it relates to his or her actions or omissions." *Aguirre*

*v. Seminole Cnty.*, 158 F.4th 1276, 1296 (11th Cir. 2025) (internal quotation omitted). "The official 'must first prove that he was acting within his discretionary authority' when he performed the acts of which the plaintiff complains." *Id.* (quoting *Bowen v. Warden*, 826 F.3d 1312, 1319 (11th Cir. 2016)). If the official makes this showing, then the burden shifts to the plaintiff to establish that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* (internal quotation omitted).

Individual Defendants, sworn law enforcement officers for FWC, were acting within their discretionary authority. As alleged, both Huff and Vazquez were "acting under color of state law." [ECF 13 at 4, ¶¶13-14]. And it is beyond dispute that drafting and submitting an Incident Report to a State Attorney for prosecution is within the discretionary authority of sworn law enforcement officers. [*Id.*]; *see, e.g.*, *Howard v. Gee*, 538 Fed. Appx. 884, 887 (11th Cir. 2013) (correctional officers acted within discretionary authority when investigating complaint and drafting incident report for prosecution); *Correa v. Torres*, No. 6:10–cv–1328–Orl–28DAB, 2012 WL 1206369, at *3 (M.D. Fla. Apr. 11, 2012) (defendant acted within his discretionary authority when submitting report to obtain arrest warrant).

Accordingly, the relevant consideration with respect to D. Beach's constitutional claims is whether the alleged conduct of Individual Defendants violated a clearly established constitutional right. As explained below, it did not.

*A.* *Plaintiff's Fabrication of Evidence-Due Process Claim (Count II) Should be Dismiss as Duplicative of Count III*

In Count II, the Complaint alleges that Huff knowingly fabricated evidence in his May 1, 2024 Investigative Report, by characterizing D. Beach's statements as "criminal threats" in violation of his Fourth Amendment rights. [ECF 13 at 15, ¶52]. However, Count II is due to be dismissed because fabrication of evidence claims challenging pre-trial arrest and detention are "really just a species of malicious prosecution." *Duarte v. Rivera*, No. 2:25-cv-408-SPC-DNF, 2026 WL 124304, at *7 (S.D. Fla. Jan. 16, 2026). "[I]n [the Eleventh] Circuit, the right a fabrication-of-evidence claim vindicated is the right not to be prosecuted with fabricated evidence." *Id.*

Count II does not allege any independent improper conduct as to Huff beyond that included in Count III. In fact, Huff's allegedly improper conduct in each count is identical. *Cf.* [ECF 13 at 15-16, ¶¶53-54 (alleging that Huff's fabrication of evidence "transformed Plaintiff's otherwise unprosecutable conduct into felony criminal process") & 16-17, ¶59 (alleging that the criminal charges depended on "Huff's after-the-fact characterization of Plaintiff's May 26, 2023, statements as criminal threats")]. And, because both claims assert the same constitutional injury, they are analyzed under the same legal framework. *See Bent v. Wilson*, No. 6:21-cv-75-WWB-EJK, 2022 WL 4290435, at *3 (S.D. Fla. Sept. 16, 2022).

Accordingly, Count II should be dismissed as duplicative of Count III. *See id.* (dismissing plaintiff's fabrication of evidence claim as duplicative of separate claim for malicious prosecution because both claims relied on defendant's "purportedly false or misleading statements to obtain an arrest warrant and Plaintiff's subsequent detention"). Even if this Court is not inclined to dismiss Count II on this basis, it should be analyzed under the same framework as the malicious prosecution claim, and, for the reasons explained below, should nonetheless be dismissed with prejudice.

*B.* *<u>Plaintiff D. Beach's First Amendment Retaliatory Prosecution and Fourth Amendment Malicious Prosecution Claims Should be Dismissed Because Arguable Probable Cause Existed (Counts I & III)</u>*

To state a cognizable legal claim for retaliatory prosecution, Plaintiff "'must show that the nonprosecuting official acted in retaliation, and must also show that *he induced the prosecutor to bring charges that would not have been initiated without his urging.*'" *Rehburg v. Paulk*, 611 F.3d 828, 848-49 (11th Cir. 2010) (quoting *Hatman v. Moore*, 547 U.S. 250, 261-62 (2006) (emphasis in original))). Accordingly, "a plaintiff must plead and prove both (1) a retaliatory motive on the part of the non-prosecutor official, and (2) the absence of probable cause supporting the prosecutor's decision." *Id.* at 849. And, "where the government actor can show it had probable cause to take legal action against the plaintiff's protected activity, a

retaliation claim will usually[2] 'fail as a matter of law.'" *O'Boyle v. Commerce Grp., Inc.*, No. 22-10865, 2023 WL 2579134, at *4 (11th Cir. Mar. 21, 2023) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 408 (2019)).

Furthermore, to succeed on a malicious-prosecution claim, "a plaintiff must show that the legal process justifying the seizure was defective due to constitutional infirmities." *Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1301 (11th Cir. 2025).

> A malicious prosecution claim under 42 U.S.C. § 1983 exists where (1) an original judicial proceeding against the present Plaintiff was commenced or continued; (2) the present Defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present Plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present Defendant; and (6) Plaintiff suffered damages as a result of the original proceeding.

*Ardis*, 2014 WL 103232, at *5.

The Complaint's failure to establish the absence of arguable probable cause with respect to D. Beach's 2024 criminal charges is fatal to the constitutional claims. The gravamen of the constitutional claims in his case is that Huff submitted an investigation report with fabricated evidence and Vazquez submitted a separate investigation report, both of which improperly induced the prosecutor to press charges against D. Beach.

---

[2] This rule is subject to two narrow exceptions, neither of which are applicable in this case. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1297-98 (11th Cir. 2019).

A report or probable cause affidavit, "may be constitutionally defective when an officer has intentionally or recklessly made misstatements or omissions necessary to support the probable-cause finding." *Aguirre*, 158 F.4th at 1301. In this instance, the Court conducts a two-step analysis to determine the affidavit's integrity. First, the Court evaluates "an allegedly defective affidavit by assessing whether there were any intentional or reckless misstatements or omissions." *Id.* If so, the Court then asks "whether probable cause would be negated if such statements were removed or omissions included." *Id.* If absent the alleged misstatements there was still arguable probable cause to bring criminal charges, then the officers are entitled to qualified immunity. *Id.* at 1302.

More specifically, in the qualified immunity context the Court reviews for arguable probable cause. *Id.* The "arguable-probable-cause standard asks whether a reasonable officer in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed." *Aguirre*, 158 F.4th at 1301 (alterations and internal quotations omitted).

On May 23, 2024, the State Attorney's Office filed an Information charging D. Beach with two criminal felony counts:

> COUNT I: On or about the Fall of 2023 until May of 2024, did unlawfully and knowingly engage in any conduct that threatened to cause or attempt to cause bodily injury to another person, Florida Wildlife Officer Edward Vazquez, or damaged the tangible property of another person, or threatened to do so, with intent to retaliate against Florida Wildlife Officer Edward Vazquez for his attendance at an

> official proceeding, or for any testimony given or any record, document, or other object produced as a witness in an official proceeding or any information provided relating to the commission or possible commission of an offense, contrary to§ 914.23(1) Florida Statutes.
>
> COUNT 2: On or about the Fall of 2023 until May of 2024, did unlawfully threaten to harm any public servant, Florida Wildlife Officer Edward Vazquez, his or her immediate family, or any other person with whose welfare the public servant is interested with the intent to influence the performance of any act or omission that the person believes to be, or that the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty or did cause or induce the public servant to use or exert, or procure the use or exertion of, any influence upon or with any other public servant regarding any act or omission that the person believes to be, or that the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty contrary to § 838.02(3)(b) Florida Statutes.

[Ex. 4 at 1].

Attached and incorporated into the Information were Huff's May 1, 2024, incident report and Vazquez' April 26, 2024, incident report. [Ex. 4 at 3-19]. The Complaint alleges that a portion of Huff's Investigative Report included fabricated evidence and material omissions. [ECF 13 at 8, ¶¶29-30]. More specifically, the Complaint states that in the incident report, Huff claimed "that Plaintiff made criminal threats during the May 26, 2023 telephone call." [ECF 13 at 8, ¶29]. It additionally alleges that "Huff omitted from his report the material facts that no contemporaneous report of threats was made in May 2023, that no charges were

sought in 2023, and that the filing of [the May 1, 2024 incident report] immediately followed Plaintiff's exposure of Huff's OIG record." [ECF 13 at 8, ¶30].

Even assuming solely for purposes of this motion that Huff included false allegations of threats with respect to the May 26, 2023, telephone conversation and omitted the above allegations, as Plaintiffs allege, the remainder of the allegations in Huff's report and, more importantly, the allegations included in Vazquez' report, establish arguable probable cause for the charges.

Of note, the Information does not identify Huff as a victim with respect to either charge, instead focusing only on D. Beach's communications with Vazquez. And, Vazquez' report alleges (and provides screen shots of) numerous harassing and disturbing text messages D. Beach sent to Vazquez's FWC cell phone, from June of 2023 through April 18, 2024. [Ex. 4 at 9-19]. By way of example, Vazquez report indicates that D. Beach sent him the following messages:

> **June 29, 2023:** "Hey pig s**t, I need my camera back now. Our case was dismissed."
>
> **December 7, 2023:** **"**Dear pig s**t, I wanted you to know I truly hope you die a slow death in a fire. I just wish I was there to smell you flesh burning and watch you burn to death. I would move close to your grave site so I can piss on your grave every day. Welcome to American where we have the right to free speech. F**k you and eat s**t Edward. Oh, and tell your daddy Clay, don't bother calling me about this one because I know your b***h a** is going to run straight to him and tattletale. Y'all do what y'all need to do. I would love to have a face-to-face conversation with you directly, so you're ever interested let me know. You name the time and place and I'll be there."
>
> **January 1, 2024:** "F**k you pig."

> **April 18, 2024: "**You thought you were going to make a name for yourself by charging my white elected official wife. Why didn't you charge Brandon with the dogs? Racial discrimination? That was a big mistake on your part. You didn't get anything you wanted. We didn't loss[sic] our hunting privileges and the charges where[sic] dismissed. It's crazy the tax dollars you wasted on building a case against us. Facial recognition, judge warrants, brought the dogs out look for the arrow. All that effort for nothing. You're a nasty s**t bag pig mother f****r. Your day is coming."

[Ex. 4 at 9-10].

As referenced in the June and April messages above, in 2022 Vazquez investigated and filed criminal charges against both D. Beach and S. Beach for illegally setting up hunting equipment, and against S. Beach for illegally shooting a deer in an area closed to hunting within state forest owned by the Suwanee River Water Management District. [Ex. 2 at 2]; [Ex. 6 at 3-4]; Ex. 7 at 1-4]. Charges against both Plaintiffs were dismissed after they completed pre-trial diversion. [Ex. 6 at 6]; Ex. 7 at 6].

Vazquez further explains in his report that he informed his supervisors of the messages. [Ex. 4 at 11]. His supervisors then contacted D. Beach, who admitted to sending the messages. [*Id.*]. Vazquez states that D. Beach continued to send him the harassing and threatening messages despite Vazquez' supervisors asking that D. Beach stop doing so and despite D. Beach being aware that Vazquez was a law enforcement officer. [*Id.*]. Vazquez also explained that prior to receiving D. Beach's messages, he would patrol in Taylor County near the coast, but since that time he

had not done so because he was afraid for his safety and that his wife was also fearful of coming across D. Beach in public. [*Id.*].

To establish the crime of witness retaliation pursuant to § 914.23, Florida Statutes, the State is required to prove the following two elements:

1. Defendant knowingly threatened to cause bodily injury to victim

2. Defendant did so, with intent to retaliate against the victim for any testimony given or any record, document, or other object produced as a witness in an official proceeding or any information provided relating to the commission or possible commission of an offense

*Instruction 21.9*, Florida Standard Jury Instructions in Criminal Cases, at 1096 (June 12, 2026).

To establish the crime of corruption by threats pursuant to § 838.021, Florida Statutes, the State is required to prove the following elements:

1. Defendant unlawfully threatened unlawful harm to victim or victim's immediate family.

2. At the time, victim was a public servant.

3. Defendant did so, with the intent or purpose to influence the performance of any act or omission that defendant believed to be, or that the victim represents as being, within the official discretion of the victim, in violation of a public duty, or in performance of a public duty.

*Instruction 21.12*, Florida Standard Jury Instructions in Criminal Cases, at 1105 (June 12, 2026).

Without considering Huff's allegations related to his May 26, 2023, phone conversation with D. Beach, there was arguable probable cause to support both

criminal charges. In response to Vazquez simply performing his lawful duties, which include investigating potential crimes, gathering evidence, and submitting reports for consideration of criminal charges, D. Beach sent messages to Vazquez wishing his death, referencing his close family members, and threatening as recently as one month prior to the criminal charges that "Your day is coming." [Ex. 4 at 10]. Vazquez report indicates that these messages started because of Vazquez's 2022 investigation and the information he provided in the criminal case (witness retaliation) and that the messages caused Vazquez to no longer patrol in Taylor County out of fear for his safety (corruption by threats).

Furthermore, the alleged "material omissions" would not otherwise change the conclusion. Plaintiffs allege that Huff failed to include the following: (1) no contemporaneous report of threat was made after the May 2023 telephone call; (2) no charges were sought in 2023; and, (3) Huff submitted the report shortly after Plaintiff disclosed the OIG report. [ECF 13 at 8, ¶30]. However, even without including these specific statements, the information which Plaintiffs contend is "material" was still included within Huff's report.

For example, Huff's report explains that after the May 2023 telephone call, Huff and his supervisor met with State Attorney John Durrett regarding their concerns about D. Beach's behavior toward Vazquez and State Attorney Durrett indicated that he would meet with D. Beach to discuss the issue. [Ex. 2 at 2]. State

Attorney Durrett also indicated that he would explain to D. Beach that "any further actions he conducted would be dealt with potential charges." [*Id.*]. That Huff met with the State Attorney, who indicated criminal charges could be pursued if D. Beach's conduct continued indicates that criminal charges were not pursued after the May 2023 phone call. Additionally, the date of D. Beach's dissemination of the OIG report (April 18, 2024) and that he did so, is indicated in the report. Therefore, based on the date of the report, the proximity would have been evident.

Finally, to the extent Plaintiffs contend that the timing of Individual Defendant's report is evidence of malice, that allegation is belied by the timeline in the reports and the allegations within the Complaint. Specifically, the State Attorney indicated that D. Beach would be informed that any further conduct on his part could lead to the pursuit of criminal charges. [ECF 13 at 7, ¶25 (indicating that instead of filing criminal charges, Huff went to the State Attorney, who then met with D. Beach "and warned him against further communications.")].

Despite the State Attorney's warning, after that meeting, on April 18, 2024, D. Beach threatened Vazquez, stating "Your day is coming." [Ex. 3 at 2]. In light of his continued conduct, it should not have been a surprise to D. Beach that criminal charges were pursued shortly thereafter. The point being, regardless of Huff's allegedly fabricated and omitted evidence, arguable probable cause existed with respect to the 2024 criminal charges.

Under similar facts, the Southern District Court dismissed a plaintiff's claim for malicious prosecution. *Lindsey v. Howell*, No. 8:10–cv–1910–T–23AEP, 2011 WL 1842869, at *2 (S.D. Fla. May 16, 2011). There, the plaintiff was charged with Corruption by Threat Against Public Servant, when he threatened to "use a gun" on any police officer that attempted to board his boat to enforce a County ordinance. *Id.* The plaintiff later filed suit alleging that the criminal charges were retaliatory in violation of his First Amendment rights and constituted malicious prosecution because the charges resulted from his opposition to the boat ordinance the police officers were trying to enforce. *Id.* at **1-2.

The court dismissed plaintiff's claims, concluding that the officer had "abundant probable cause" because the plaintiff's threats were designed to deter the law enforcement officer from acting. *Id.* at *3. As the court explained, "[a] threat that deters law enforcement is precisely the harm that the 'Corruption Against Public Servant,' designs to prevent." *Id.*

Because Huff and Vazquez had arguable probable cause to support D. Beach's criminal charges, they are entitled to qualified immunity. And, for this reason, the constitutional claims should be dismissed with prejudice.

C. *<u>Plaintiff D. Beach Cannot Establish His Malicious Prosecution and Fabrication of Evidence Claims Because There Was No Bona Fide Termination in His Favor (Counts II, III, V)</u>*

In the Complaint, D. Beach alleges that the 2024 criminal charges terminated in his favor because "On December 3, 2024, the State of Florida formally abandoned and withdrew the felony charges of Retaliating Against a Witness (§ 914.23) and Corruption by Threat (§ 838.021) by filing a 2nd Amended Information that completely eliminated both felony counts." Not so.

In fact, the December 3, 2024, Second Amended Information included the following charges:

IN THE CIRCUIT COURT OF THE
THIRD JUDICIAL CIRCUIT, IN AND
FOR MADISON COUNTY, FLORIDA.

STATE OF FLORIDA

CASE NO. 24-000089-CF

vs.

**2nd AMENDED INFORMATION**

Dustin T. Beach
[redacted]
Defendant(s).
_______________________________/

INFORMATION FOR:

1) RETALIATING AGAINST A WITNESS (F3) (ref. #8880)
2) CORRUPTION BY THREATS (F3) (ref. #3118)

[Ex. 5 at 2, 8-9].

Plaintiff's factual allegations regarding the disposition of the two felony counts are directly contradicted by the public docket and pleadings in his criminal case, which reveal that as part of a negotiated plea agreement on the day the trial

was set to begin, Plaintiff pled no contest to the lesser misdemeanor resisting arrest charges in exchange for the State Attorney dismissing the felony charges and was sentenced to two years' probation—a sentence which Plaintiff is still actively serving at this time. [*Id.* at 1, 10-18]. This is evident because the misdemeanor charges are included in the same criminal case number as the felony charges, but that case only ever had two counts. [*Id.* at 1, 11]. Additionally, there was never an information filed in Plaintiff's criminal case alleging two misdemeanor counts—meaning, Plaintiff was never charged with the misdemeanor criminal violations. [Ex. 4 at 1]; [Ex. 5 at 1, 2-9].

Furthermore, this Court is under no obligation to construe the allegations relating to the disposition of D. Beach's felony charges as true. Because the attached exhibits, "directly contradict the allegations in the pleading, the exhibits govern." *Eiras*, 239 F. Supp. 3d at 1342.

D. Beach's no contest plea, regardless of whether adjudication was withheld is treated as a conviction pursuant to Florida Statutes. Fla. Stat. § 960.291(3) ("'Conviction' means a guilty verdict by a jury or judge, or a guilty or nolo contendere plea by a defendant, regardless of adjudication of guilt."). As this Court has previously explained, "[a]lthough Plaintiff was originally charged with a felony and pled no contest to a misdemeanor as part of a plea bargain, that does not constitute a termination in his favor." *Dirden v. Gentry*, No. 3:23cv4689/RH/ZCB,

2024 WL 3333271, at *3 (N.D. Fla. June 5, 2024); see also *Ardis v. Danhesisser*, No. 3:13cv366/MCR/EMT, 2014 WL 103232, at *6 (N.D. Fla. Jan. 10, 2014) (plaintiff failed to show bona fide termination in her favor where charges were dismissed pursuant to negotiated plea agreement).

The Middle District has similarly explained, "[t]he dismissal of the felony charges against [the plaintiffs] do not indicate they are innocent," but instead "the dismissal shows a typical plea bargain, in which defendant agrees to plead to a lesser offense and the state agrees to forego harsher charges in favor of a certain speedy resolution." *Stepanovich v. Bradshaw*, No. 2:14-270-FtM-PAM-MRM, 2017 WL 10398672, at *2 (M.D. Fla. Jan. 18, 2017) (dismissing plaintiffs malicious prosecution claim).

Therefore, because D. Beach entered a no contest plea in the 2024 criminal case and is as of the date of the instant motion still on probation with respect to those charges, he cannot establish that the criminal proceedings terminated in his favor and his Fourth Amendment claim fails as a matter of law. For this same reason, D. Beach's common law malicious prosecution claim (Count V), which includes as an element a bona fide termination in D. Beach's favor, fails as a matter of law.

Accordingly, for this additional reason, D. Beach's malicious prosecution claims and fabrication of evidence claim should be dismissed with prejudice.

## III. The Complaint Fails to Allege a Cognizable Claim Against Vazquez for Violation of the Driver's Privacy Protection Act (Count IV)

DPPA plaintiffs must allege that the defendant knowingly obtained, disclosed, or used personal information from a motor-vehicle record for a purpose not permitted by 18 U.S.C. § 2721(b). *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1111-14 (11th Cir. 2008). Plaintiffs bear the burden of establishing an impermissible purpose. *Id.*

The DPPA permits disclosure "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions." 18 U.S.C. § 2721(b)(1). The Complaint places the November 2022 queries within an active FWC investigation, which resulted in criminal citations being issued to both Plaintiffs, which were only dismissed upon Plaintiffs successful completion of the pre-trial diversion programs. [ECF 13 at 6, ¶¶20-21; Ex. 6 at 6; Ex. 7 at 6]. The 2024 queries are not attributable to Vazquez at all, rather the Complaint alleges they were related to the U.S. Marshalls execution of a court-issued capias. [ECF 13 at 11, ¶¶36-37].

The Complaint's conclusory assertions that the searches lacked legitimate justification or served retaliatory purposes do not identify facts indicating that any conduct by Vazquez fell outside the governmental-function exception. *See Thomas*, 525 F.3d at 1111-14. Regardless of whether Vazquez was aware that D. Beach was the owner of the hunting camera recovered, it still would have been necessary to

establish that D. Beach and S. Beach were the individuals captured on the camera engaged in the illegal hunting activity. [ECF 13 at 5-6, ¶¶ 19-21]. In this context, Vazquez' alleged "easy way or hard way" statement to D. Beach, asking that he admit that it was him and his wife on the hunting camera makes sense. [ECF 13 at 5, ¶18]. And, just as Vazquez allegedly said, if D. Beach did not admit to the crimes on the camera, then Vazquez would have to go through the process of obtaining a warrant to download the pictures and videos on the camera and match them to Plaintiffs, which Vazquez ultimately did on November 7, 2022. [ECF 13 at 6, ¶20].

Because Count IV alleges no facts establishing an impermissible purpose, it should be dismissed with prejudice.

## IV. Plaintiffs' State Law Claims Fails as a Matter of Law for a Variety of Reasons (Counts V, VI, VII, VIII)

### *A. Plaintiffs' State Law Claims are All Barred by Official Immunity*

Pursuant to Fla. Stat. § 768.28(9)(a), "state officers, employees and agents are immune from suit in their personal capacity for discretionary actions taken within the scope of their official authority." *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 989 (N.D. Fla. 2019). "This statutory immunity may be pierced only where a state official either: (1) acts outside the scope of his employment; or (2) acts 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Id.* (quoting Fla. Stat. § 768.29(9)(a)).

"Thus, to survive a motion to dismiss on official immunity grounds, a plaintiff must provide a good faith factual basis in the complaint for concluding that the state official either acted outside the scope of his employment or in bad faith." *Id.* (citing *Brown v. McKinnon*, 964 So. 2d 173, 175 (Fla. 3d DCA 2007)). "Courts construing the bad faith prong of § 768.29(9)(a) use the actual malice standard, *Parker v. State Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998), which means the conduct must be committed with 'ill will, hatred, spite, [or] evil intent.'" *Id.* (quoting *Reed v. State*, 837 So. 2d 366, 368–69 (Fla. 2002)). The conduct alleged must be "'conduct that is worse than gross negligence,' or 'more reprehensible and unacceptable than mere intentional conduct'" and it must establish that "the officers acted 'with a conscious and intentional difference to consequences and with the knowledge that damages was likely to be done to persons or property.'" *Coleman v. Hillsborough Cnty.*, 41 F.4th 1319, 1329 (11th Cir. 2022) (quoting *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020)).

***i. Both Huff and Vazquez were Acting within the Course and Scope of Their Employment***

As explained above, both Huff and Vazquez were acting within the course and scope of their employment with respect to their allegedly improper conduct. The Complaint alleges that Huff and Vazquez acted as FWC law-enforcement officers while investigating suspected offenses, preparing or submitting investigative materials, and communicating with prosecuting authorities. [ECF 13 at 4-9, ¶¶13-

14, 16, 23-30]. Counts V through VIII likewise seek to impose liability for those same official acts. [ECF 13 at 19-24, ¶¶71-92]. Plaintiffs do not allege that either officer was pursuing a private transaction or acting wholly outside his assigned law-enforcement function. The challenged conduct therefore falls within the scope of employment, triggering section 768.28(9)(a).

#### *ii. There Are No Allegations that Vazquez Acted with Actual Malice*

The deficiency is clearest as to Vazquez. His alleged "easy way or hard way" statement occurred during the 2022 hunting-trespass investigation, long before the 2024 felony referral. [ECF 13 at 5-6, ¶¶18-20]. Moreover, despite the malintent to which Plaintiffs would ascribe it, the comment, in all actuality is merely a statement of Vazquez' lawful authority to gather evidence during a criminal investigation and an explanation that doing so would not be required if D. Beach admitted to his unlawful conduct.

Beyond the one statement, the Complaint identifies no retaliatory statement by Vazquez, no evidence he fabricated, no material representation he made to the appointed prosecutor, and no act by which he procured either felony charge, the capias, or the internet restriction. In fact, the Complaint appears to concede, or at the least does not dispute, the accuracy of the facts and existence of the text messages included in Vazquez' incident report. [ECF 13 at 9, ¶32 (disputing whether messages

were sufficient to meet elements of charged conduct, but not whether they were sent by D. Beach)].

These allegations do not support a reasonable inference that Vazquez acted improperly at all, much less that he knowingly engaged in conduct more reprehensible than gross negligence. Again, Vazquez was the named *victim* in the criminal charges and as of the date of this Motion, there is an active court order prohibiting D. Beach from contacting Vazquez or his family. [Ex. 5 at 10-18]. Repeating in the state-law counts that he acted with "malice, bad faith, and wanton disregard" merely recites the statutory exceptions. [ECF 13 at 19-23, ¶¶76, 82, 92]. Without supporting facts, this "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements do[es] not suffice." *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

***iii. The Allegations as to Huff Do Not Plausibly Establish Actual Malice***

Plaintiffs' theory against Huff is that the timing of his May 2024 investigative report, his March 2023 statement that false accusations would not be tolerated, and the prior Inspector General finding reveal retaliatory animus. [ECF 13 at 6-10, ¶¶22-33; 16-17, ¶59]. But those allegations must be considered with the conduct actually pleaded. The Complaint does not allege Huff's report included statements D. Beach never made,  identify any specific factual content Huff invented or altered, or allege

that Huff requested the pretrial internet condition. *See, e.g.*, *Gill*, 941 F.3d at 515 (disregarding allegation in complaint that "there are material misstatements and omissions in the Affidavit" as it was it was too broad). It instead alleges that the fabrication was Huff's characterization of D. Beach's statements as criminal threats for the first time in the report and that the report omitted certain additional information. [ECF 13 at 8-9, ¶¶29-31].

Notably, however, the investigative report never characterizes D. Beach's statements during the May 23, 2026, conversation as criminal threats. [Ex. 4 at 4]. Rather, the report asserts that D. Beach sent "Vazquez texts in a threatening and demeaning manner, ten texts total." [Ex. 4 at 4]; *see, e.g.*, *Gill*, 941 F.3d at 514 (noting the "classic example" of when exhibits control is "when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself.").

The allegedly nefarious delay between the May 26, 2023, statement and the May 1, 2024, investigative report is explained in the Complaint and in the report itself. Rather than file criminal charges in May 2023, Huff and Major Lee brought Beach's statements to the then-State Attorney in 2023, resulting in a warning to Beach that any further action could result in criminal charges. [ECF 13 at 7, ¶25]; [Ex. 4 at 4]. It was not until April 2024 when D. Beach continued making threats against Vazquez and additionally contacted Huff's wife and friends via Facebook

messenger that criminal charges were pursued. At most this chronology may invite an inference that Huff disliked Beach's criticism or acted from an improper motive, but section 768.28(9)(a) requires facts plausibly showing the subjective intent to do wrong or conscious indifference with knowledge that harm was likely. *Coleman*, 41 F.4th at 1325-27.

Huff's statement as documented in the March 6, 2023, email is similarly insufficient. The March 2023 email addressed "false accusations" rather than protected complaints generally. [ECF 13 at 6-7, ¶23]. And the content of the email makes clear that even D. Beach acknowledged at the close of the call that the information upon which he had relied to make the complaint against Vazquez had likely been a lie. [Ex. 1 (*March 2023 Email*) at 1] (noting D. Beach stated during the call he would call his friend because "he felt he was lied to").

*B.* *<u>Count VI Does Not State a Cognizable Abuse of Process Claim</u>*

"[T]he mere filing of a complaint and having process served is not enough to show abuse of process." *Della-Donna v. Nova Univ., Inc.*, 512 So. 2d 1051, 1055 (Fla. 4th DCA 1987). The tort addresses the use of valid process to accomplish an improper collateral objective. It does not arise merely because process was initiated maliciously, without probable cause, or for an improper purpose. *Cline v. Flagler Sales Corp.*, 207 So. 2d 709, 711 (Fla. 3d DCA 1968).

Plaintiffs' allegations fail because even an alleged bad motive in commencing an action does not state abuse of process unless the defendant later commits an improper act in using the process. The Complaint does not allege that either Huff or Vazquez engaged in any conduct following the submittal of their Investigation Reports—conduct which took place *before* D. Beach's arrest warrant (the process) was issued. *See Marty v. Gresh*, 501 So. 2d 87, 90 (Fla. 1st DCA 1987) (holding events before service of process which may have suggested malicious intent did not advance cause of action for abuse of process); *Cline*, 207 So. 2d at 711.

Count VI, instead alleges in conclusory fashion that Individual Defendants "utilized and enforced the pending criminal process post-issuance . . . nineteen day total internet and social media ban for the collateral purpose of coercing [D. Beach] to cease filing complaints with the FWC Office of Inspector General." ECF 13 at 21, ¶¶79-80. But it does not allege that Huff or Vazquez requested that condition, appeared at the release proceeding, communicated with the court about it, or exercised any authority over it after imposition. Rather, that conduct is directly attributed to the State Attorney. [ECF 13 at 11, ¶38 (indicating that State Attorney confirmed restriction)]. Nor does it otherwise allege how an internet and social media would have prevented D. Beach from submitting a complaint to the FWC Office of Inspector General through other means such as telephonically, in writing through the mail, or in person.

C. *Count VII Does Not Plausibly Allege Intentional Infliction Of Emotional Distress*

Intentional infliction of emotional distress requires, in part, conduct so extreme and outrageous as to exceed all possible bounds of decency. *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985). Whether the alleged conduct may reasonably be regarded as sufficiently outrageous is initially a question of law for the Court. *Id.* at 279.

For the same reasons that the allegations in the Complaint do not establish that Huff acted with actual malice, they likewise fail to state a plausible claim for intentional infliction of emotional distress. *See Lindsey v. Howell*, No. 8:10–cv–1910–T–23AEP, 2011 WL 2894622, at *3 (M.D. Fla. July 20, 2011) (granting motion to dismiss and concluding that claim of malicious prosecution based on false statements was not sufficiently severe to state a cause of action); *Edison v. Florida*, 2007 WL 80831, *8 (M.D. Fla. 2007) (holding that an allegation that the defendants attempted to unlawfully convict the plaintiff and sought the death penalty was insufficient to state a claim for intentional infliction of emotional distress).

D. *Count VIII Fails Because Loss of Consortium is Derivative of the Deficient Underlying Tort Claims*

Florida recognizes a spouse's claim for loss of consortium resulting from a tortious injury to the other spouse, but the right is derivative. *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971). The consortium claimant may recover only if the injured

spouse has an actionable underlying claim against the same defendant. *Id.* Thus, because the Complaint fails to plausibly allege any of the other tort claims included, Count VIII necessarily fails and should be dismissed with prejudice. *Gates*, 247 So. 2d at 45.

**V. Dismissal with Prejudice is Appropriate**

Finally, because there are no factual allegations which Plaintiffs could include in an amended complaint to otherwise state a claim against Individual Defendants, their claims should be dismissed with prejudice. That Plaintiffs have already amended the complaint once, as a matter of course, in response to Individual Defendants' Motion to Dismiss, only further supports the notion that any further opportunities to amend would be futile. *See Barbosa v. Adkinson, et al.,* No. 3:26-cv-1209-TKW-ZCB, 2026 WL 2236939, at *11 (N.D. Fla. July 31, 2026) (denying leave to amend malicious prosecution claim where court found probable cause to support arrest); *Penton v. Centennial Bank*, No. 4:18-cv-450-AW-MAF, 2021 WL 8014675, at *6 (N.D. Fla. July 30, 2021) ("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."); "*Khayrallah v. Rutherford*, 4:24-cv-213-AW/MJF, 2024 WL 3317761, at *2 (N.D. Fla. May 23, 2024) *rep. & recom. adopted*, 2024 WL 3317746 (N.D. Fla. July 5, 2024) ("A district court, however, is not required to grant leave to amend

when a more carefully drafted complaint still could not state a claim upon which relief can be granted.").

## CONCLUSION

For these reasons, Individual Defendants respectfully request that the Court dismiss the claims against them with prejudice and grant any such other relief as the Court deems appropriate.

Dated this 29th day of September, 2026.

Respectfully submitted,

*/s/ Kristen C. Diot*

**KRISTEN C. DIOT**
Florida Bar Number: 0118625
kdiot@sniffenlaw.com
**ROBERT J. SNIFFEN**
Florida Bar Number: 0000795
rsniffen@sniffenlaw.com

**SNIFFEN & HARMON, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for Defendant, Florida Fish and Wildlife Conservation Commission*

## **CERTIFICATION OF WORD COUNT**

The undersigned certifies on this 29th day of September, 2026 that this document complies with word limits set forth in Rule 7.1(F), N.D. Fla. Loc. R., and contains 7,951 words which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

/s/ *Kristen C. Diot*
**KRISTEN C. DIOT**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail and electronically through the court's CM/ECF system to counsel of record on this 29th day of September, 2026.

/s/ *Kristen C. Diot*
**KRISTEN C. DIOT**