IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**DUSTIN BEACH and**
**SHAWNA BEACH,**

Plaintiffs,

v. **Case No. 4:26-cv-00385-AW-MAF**

**CLAY HUFF, individually, and**
**EDWARD VAZQUEZ, individually,**

Defendants.
_________________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE (ECF 16)**

Plaintiffs, DUSTIN BEACH and SHAWNA BEACH, respond in opposition to the Motion to Dismiss filed by Defendants CLAY HUFF and EDWARD VAZQUEZ (ECF 16) and state:

## INTRODUCTION

Eleven months after a May 26, 2023 telephone call with Dustin Beach, and thirteen days after Beach circulated Captain Huff's sustained Inspector General finding to Huff's wife and seventy-two mutual contacts, Huff wrote, for the first time in any record, that Beach had made threats during that call. ECF 13 ¶¶ 3, 26–29. Huff filed that report through the State Attorney together with Officer Vazquez's report, the State Attorney attached both reports to a two-count felony Information,

and a capias issued on those two felonies alone. Beach was arrested by United States Marshals and barred from all internet and social media use for nineteen days. ECF 13 ¶¶ 35–39; Ex. 5 at 5.

Defendants ask the Court to dismiss every count with prejudice. Their motion depends on reading their own reports as true, on treating the reports' conclusions as facts, and on treating a nolo contendere plea to an uncharged misdemeanor as a conviction of the two felonies on which Beach was seized. The governing law permits none of that. Once Huff's after-the-fact characterization of a 2023 telephone call as criminal threats is set aside, the record contains nothing from which a reasonable officer could find the elements of either charged felony, and the felony charges ended without a conviction. The motion should be denied.

## MEMORANDUM OF LAW

### I. The Rule 12(b)(6) Standard and the Limited Role of Defendants' Exhibits.

A complaint survives a motion to dismiss when it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Defendants omitted the standard (ECF 16 at 6 n.1), but it controls everything that follows: the well-pleaded allegations of the First Amended Complaint are accepted as true and construed in Plaintiffs' favor.

Plaintiffs do not dispute the authenticity of Exhibits 1 through 7 and do not oppose the Court's consideration of them. But considering a document is not the same as accepting its contents as true. The Eleventh Circuit addressed precisely this situation, a probable-cause document authored by the defendant officer, in Gill ex rel. K.C.R. v. Judd, 941 F.3d 504 (11th Cir. 2019). Exhibits govern only over general and conclusory allegations. "When a complaint contains specific, well-pleaded allegations that either do not appear in the attached exhibit or that contradict conclusory statements in the exhibit, we credit the allegations in the complaint." Id. at 514. The court must "compare each relevant allegation in the complaint with its counterpart in the arrest affidavit and decide if [it] is specific enough to prevent that statement in the affidavit from being considered." Id. at 514–15. And "subjective views or conclusions of a defendant officer are irrelevant to the determination of probable cause." Id. at 515.

Gill disposes of Defendants' central premise. Huff's and Vazquez's reports are not neutral public records; they are the very documents the Complaint alleges were false and misleading. The Court may notice the state court docket and charging documents for what they show, and, as explained in Part III, what they show supports Plaintiffs.

## II. Defendants Are Not Entitled to Qualified Immunity on Counts I, II, and III.

Plaintiffs do not contest that Defendants acted within their discretionary authority. The question is whether the Complaint plausibly alleges a violation of clearly established law. It does.

### A. The Governing Framework.

Defendants analyze the Fourth Amendment claim under a six-element state common-law formula drawn from a 2014 district court order. ECF 16 at 13. That is no longer the law. A Fourth Amendment malicious prosecution plaintiff must prove (1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor. Luke v. Gulley, 975 F.3d 1140, 1144 (11th Cir. 2020). The first element requires that the legal process justifying the seizure was constitutionally infirm and that the seizure would not otherwise be justified without legal process. Williams v. Aguirre, 965 F.3d 1147, 1165 (11th Cir. 2020). Legal process is infirm when either the officer who applied for it "should have known that his application failed to establish probable cause" or "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." Id. This case involves the second alternative.

The analysis proceeds charge by charge. There is no any-crime rule for malicious prosecution, id. at 1159–62, so the plaintiff in Williams needed to show only "that probable cause was absent for at least one of the two attempted murder charges that justified his seizure." Id. at 1165. The Supreme Court has since confirmed that the presence of probable cause for one charge does not insulate an official who brings another, baseless charge. Chiaverini v. City of Napoleon, 602 U.S. 556, 559 (2024) ("The answer is no: The valid charges do not create a categorical bar."). Chiaverini left open how causation is assessed when a valid charge accompanies a baseless one, id., but that question does not arise here, because neither charge that justified Beach's seizure was supported by probable cause.

In the qualified immunity setting, the Court asks whether the legal process would have supported arguable probable cause once intentional or reckless misstatements are removed and material omissions are restored. The Eleventh Circuit's recent decision on which Defendants rely states the rule: in applying the arguable probable cause standard, the court considers "only the information before the magistrate, minus any material misstatements, plus any material, omitted information." Aguirre-Jarquin v. Seminole County, 158 F.4th 1276, 1301–02 (11th Cir. 2025). Whether an officer had arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018).

The law was clearly established long before 2024. "[T]he law [is] clearly established . . . that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen . . . if such false statements were necessary to the probable cause." Williams, 965 F.3d at 1168–70 (quoting Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999)). That prohibition extends to any officer who provided information material to the probable cause determination. Id. The plaintiff in Williams "had a clearly established right to be free from a seizure based on intentional and material misstatements in a warrant application." Id.

### B. The Complaint Specifically Alleges That Huff Fabricated the Accusation That Beach Made Criminal Threats During the May 26, 2023 Call.

The Complaint does not rest on a generalized assertion that the reports contain misstatements. It identifies the specific accusation at issue. Huff's Investigative Summary Report ISR051012, executed May 1, 2024, alleged for the first time in any written or sworn record that Beach made criminal threats during the May 26, 2023 call, attributing to him the statements "You can send 30 officers to my house and see what happens" and "Eddie better not come check me this hunting season." ECF 13 ¶ 29. The Complaint alleges that Huff "knowingly fabricated material evidence by falsely asserting" in ISR051012 that Beach made criminal threats during the call, ECF 13 ¶ 52; that "[t]he fabricated characterization was material to the initiation of

legal process," ECF 13 ¶ 53; and that the characterization of Beach's statements as criminal threats "was manufactured to support felony process rather than reflecting Defendant Huff's own investigative judgment." ECF 13 ¶ 31; see also ECF 13 ¶¶ 5, 47, 85. It alleges the circumstances that make the fabrication plausible: no officer prepared any contemporaneous report, complaint, or affidavit of threats in 2023; no charges were sought in 2023; Huff first reduced the allegation to writing eleven months later and thirteen days after Beach exposed Huff's own sustained Inspector General finding for omitting material facts when complaining about another officer; Huff had already announced in writing that "false accusations against FWC officers would not be tolerated"; and Huff's report requested misdemeanor harassment and cyberstalking charges rather than the felonies later filed. ECF 13 ¶¶ 3–5, 23, 25–31. Under Gill, the Court accepts those specific allegations as true and gives no weight to Huff's conclusion, in the very report the Complaint attacks, that the call amounted to criminal threats. 941 F.3d at 514–15.

Defendants say the report "never characterizes" the May 26 statements as criminal threats. ECF 16 at 30. The report itself refutes the point. Every page of ISR051012 is captioned with the offense description "S32P THREAT TO PUBLIC OFFICIAL." Ex. 4 at 3–8. The narrative presents the attributed statements as the core of that offense, describes Beach as "very irate and belligerent," and adds that Beach had "sent Officer Vazquez several texts that were threatening in manner." Ex.

4 at 4. The State Attorney then did exactly what that characterization invited. The original Information charged conduct from "the Fall of 2023 until May of 2024." Ex. 4 at 1. The Amended Information enlarged the charged period to begin in "the Spring of 2023." Ex. 5 at 6. The only conduct described in any of the reports that occurred in the spring of 2023 is the May 26, 2023 call that Huff alone reported; Vazquez's earliest text is dated June 29, 2023. Ex. 4 at 9–10. Drawing the reasonable inference in Plaintiffs' favor, the State relied on Huff's account to sustain the felony charges. At a minimum, whether it did is a question of fact.

The omissions compound the problem. Huff's report omitted that no threat report was made in 2023, that no charges were sought in 2023, and that the report followed within days Beach's exposure of Huff's disciplinary record. ECF 13 ¶ 30. Defendants argue a careful reader could have pieced those facts together from dates scattered through the report. ECF 16 at 19–20. Whether a reader could have inferred them is a fact question; what matters is that a magistrate presented with the omitted facts would have been on notice that the reporting officer was the subject of the plaintiff's public exposure and had sat on the alleged threats for eleven months. That is precisely the kind of material omission the corrected-affidavit analysis restores.

### C. Setting Aside Huff's Characterization, No Reasonable Officer Could Have Found Arguable Probable Cause for Either Felony.

Defendants assume, for purposes of the motion, that Huff included false allegations of threats regarding the May 26, 2023 call, and argue that Vazquez's report of text messages independently supplied arguable probable cause. ECF 16 at 16–21. It did not, because the text messages do not satisfy the elements of either crime charged. Plaintiffs do not defend the tone of those messages. ECF 13 ¶ 32. But the Fourth Amendment question is not whether the messages were offensive. It is whether a reasonable officer could have believed they established probable cause for the two felonies on which Beach was seized. Gates, 884 F.3d at 1298.

#### 1. Corruption by threat, § 838.021, Fla. Stat.

Section 838.021 does not criminalize threatening or insulting a public servant. It criminalizes a threat made with the intent to "[i]nfluence the performance of any act or omission" within the public servant's official discretion, or to induce the public servant to influence another public servant. § 838.021(1)(a)–(b), Fla. Stat. Florida courts have consistently held that this intent element is the heart of the offense. "The elements of the crime require proof of a threat of unlawful harm to a public servant to influence the person threatened to do, or not do, some discretionary act." Bragg v. State, 475 So. 2d 1255, 1257 (Fla. 5th DCA 1985). "The offense of corruption by threat involves a threat made with an intent to influence a public

servant to do, or not do, some discretionary act." Smith v. State, 754 So. 2d 889, 890 (Fla. 5th DCA 2000).

Where the threat is not tied to a future official act, the charge fails as a matter of law, even when the words are violent. In Kositsky v. State, 974 So. 2d 614 (Fla. 4th DCA 2008), an arrestee threatened to slit an officer's throat "if the cuffs were removed." The court reversed the conviction because that threat "could not have had the intent of influencing the performance of an act." Id. at 616. In Teele v. State, 954 So. 2d 1195 (Fla. 3d DCA 2007), a city commissioner who did not know that the men following his wife were detectives told them he was armed and that the next person who followed his wife "better be prepared to start shooting." Id. at 1200–01. The court ordered a judgment of acquittal because there was no evidence the threat was intended "to influence any detective to do, or not to do, some official act." Id. at 1201.

Vazquez's report does not describe a single message that demands, conditions, or seeks to prevent any act by Vazquez. The messages are retrospective: they refer to a closed case, assert that "the charges where dismissed," criticize the "tax dollars you wasted on building a case against us," and hurl insults. Ex. 4 at 10. Vazquez's own report states that the messages began "[u]pon conclusion of this case." Id. There was no pending act to influence. Defendants' only answer is that Vazquez stopped patrolling in Taylor County because he felt afraid. ECF 16 at 19.

But the statute turns on the accused's intent, not on the officer's reaction, see Kositsky, 974 So. 2d at 616, and an officer's subjective views and conclusions are "irrelevant to the determination of probable cause." Gill, 941 F.3d at 515. The same is true of Vazquez's conclusion that Beach acted "with intent to intimidate me." Ex. 4 at 11.

This is why Huff's characterization was material. The only words anywhere in the charging packet that even arguably link a threat to a future official act are the words Huff attributed to Beach eleven months after the fact: "Eddie better not come check me this hunting season." ECF 13 ¶ 29; Ex. 4 at 4. Even crediting that Beach said them, nothing about the call supplied the intent § 838.021 requires except Huff's after-the-fact label. Beach spoke to Huff and Captain Glover, not to Vazquez, during a call about Beach's own complaint. ECF 13 ¶ 24; Ex. 4 at 4. By Huff's own account, Beach "eventually calmed down and started talking in a normal voice," thanked Huff "for listening to him," and stated "he would not contact Vazquez anymore." Ex. 4 at 4. No officer reported a threat in 2023, no charges were sought, and the State Attorney responded only by warning Beach against further communications. ECF 13 ¶ 25. The Complaint alleges that the characterization of the call as criminal threats was manufactured eleven months later to support felony process, ECF 13 ¶¶ 3, 31, and that, absent that characterization, Vazquez's texts did not supply probable cause for either felony. ECF 13 ¶ 33. Those allegations must be accepted at this stage, and

an officer's conclusions are "irrelevant to the determination of probable cause." Gill, 941 F.3d at 515. Set aside Huff's label, and nothing remains to satisfy the intent element of § 838.021. As in Williams, once the challenged accusation is removed, "no facts" remain to support the charge. 965 F.3d at 1168–70.

Defendants' reliance on an unreported district court order (ECF 16 at 21) underscores the distinction. As Defendants describe it, the plaintiff there threatened to "use a gun" on any officer who attempted to board his boat to enforce an ordinance, a threat expressly conditioned on, and designed to prevent, an imminent official act. ECF 16 at 21. That is the paradigm § 838.021 case. Nothing similar appears in Vazquez's report.

**2. Retaliating against a witness, § 914.23(1), Fla. Stat.**

Beach was charged under subsection (1) of § 914.23, which reaches threats made with intent to retaliate for "[t]he attendance of a witness or party at an official proceeding, or for any testimony given or any record, document, or other object produced by a witness in an official proceeding." § 914.23(1), Fla. Stat.; Ex. 4 at 1. By its express terms, the statute requires proof that the defendant threatened bodily injury "with the intent to retaliate against the person for his testimony as a witness in an official proceeding." State v. Jones, 642 So. 2d 804, 805 (Fla. 5th DCA 1994). An "official proceeding" is a proceeding before a judge, court, or grand jury, the Legislature, a federal agency, or the Commission on Ethics. § 914.21(4), Fla. Stat.

Nothing in either report identifies any testimony Vazquez gave, any record he produced as a witness, or any official proceeding he attended. The 2022 matters ended in pretrial diversion. ECF 16 at 2; ECF 13 ¶ 21. The messages complain about Vazquez's investigation and charging decisions, "[f]acial recognition, Judge warrants, brought the dogs out," not about testimony. Ex. 4 at 10. An officer's work in investigating and citing a suspect is not testimony in an official proceeding, and the Complaint so alleges. ECF 13 ¶ 32. The Information's boilerplate reference to "information provided relating to the commission or possible commission of an offense" (Ex. 4 at 1) borrows the language of subsection (2), which protects a person who gives information "to a law enforcement officer," § 914.23(2), Fla. Stat.; it does not convert the investigating officer himself into the protected informant, and Beach was not charged under subsection (2).

Defendants' theory that the messages "started because of Vazquez's 2022 investigation and the information he provided in the criminal case" (ECF 16 at 19) is an argument about motive for criticizing an investigation. It does not supply the official-proceeding element. A reasonable officer who looked at "the elements of the alleged crime and the operative fact pattern," <u>Gates</u>, 884 F.3d at 1298, could not have believed that probable cause existed for a felony that requires retaliation for testimony or attendance at an official proceeding when no proceeding, testimony, or attendance is identified anywhere.

### 3. Each baseless charge independently supports the claim.

Because probable cause is assessed charge by charge, Plaintiffs need only show that probable cause was absent for one of the two felonies that justified the seizure, Williams, 965 F.3d at 1165; see Chiaverini, 602 U.S. at 559, and, to overcome qualified immunity, that no reasonable officer in Defendants' position could have believed otherwise on the corrected record. Aguirre-Jarquin, 158 F.4th at 1301–02. Both felonies fail that test. And because both felonies, and only those felonies, justified the capias, the $10,000 per-count bond, the arrest by the Marshals, and the internet ban (Ex. 4 at 2; Ex. 5 at 5), the seizure would not otherwise have been justified without legal process. Williams, 965 F.3d at 1165.

## D. The Complaint States a Claim Against Vazquez.

Defendants argue that Vazquez cannot be liable because the texts he reported were real. ECF 16 at 28–29. But Vazquez did not merely forward screenshots. Huff's report states that Huff was "filing this report through the 3rd Circuit State Attorney's Office, along with a report from Officer Vazquez." Ex. 4 at 5. The two reports were submitted together, within days of each other, immediately after Beach exposed Huff's disciplinary record. ECF 13 ¶ 28. Vazquez's report supplied the conclusions on which the felonies depended: that the messages were sent "with intent to intimidate me," that they arose from Vazquez "performing my lawful duty," and that they caused him to change his patrols. Ex. 4 at 11. The Information certified that

"testimony was received under oath from the material witness or witnesses." Ex. 4 at 2. The Complaint alleges that both Defendants initiated and caused the felony prosecution by supplying reports that were fabricated and legally insufficient, ECF 13 ¶¶ 58–59, 73, and that Vazquez had previously threatened to make things "hard" on Beach. ECF 13 ¶ 18. Liability is not limited to the officer who applies for the process; it extends to any official, "including an individual who did not apply for the warrant," who "intentionally or recklessly made misstatements or omissions necessary to support the warrant." Williams, 965 F.3d at 1165. Whether Vazquez knew that his joint submission rested on Huff's fabricated threat accusation and on conclusions that did not satisfy the statutory elements is a question for discovery. If the Court finds the allegations against Vazquez thin, the remedy is leave to amend, not dismissal with prejudice. See Part VI.

### E. Count I States a Retaliatory Prosecution Claim.

A retaliatory prosecution plaintiff must plead and prove that the non-prosecuting official acted with retaliatory motive, that the official induced the prosecutor to bring charges that would not have been initiated without his urging, and that probable cause was absent. Hartman v. Moore, 547 U.S. 250, 262, 265–66 (2006); Rehberg v. Paulk, 611 F.3d 828, 848–49 (11th Cir. 2010), aff'd, 566 U.S. 356 (2012). Defendants challenge only the probable cause element. ECF 16 at 12–21. The Complaint also pleads inducement: Huff and Vazquez submitted reports

seeking charges, the State Attorney attached and incorporated both reports in the Information, and the Information certified that sworn testimony was received from the material witnesses. ECF 13 ¶¶ 28, 35, 58–59, 73; Ex. 4 at 1–2. For the reasons in Part II.C, probable cause and arguable probable cause were absent. The Complaint pleads retaliatory motive with particularity: protected complaints, public records requests, and the distribution of Huff's sustained Inspector General record (ECF 13 ¶¶ 22, 26–27, 46); Huff's written warning, issued in response to a protected complaint he unilaterally deemed false, that "false accusations against FWC officers would not be tolerated" (ECF 13 ¶¶ 4, 23; Ex. 1); the thirteen-day interval between Beach's exposure of Huff's record and the reports seeking charges (ECF 13 ¶¶ 28–29); and the internet and social media ban imposed on a man whose offense, in Huff's own words, was using "the social media platform to attack another member of our agency." Ex. 4 at 5; Ex. 5 at 5. Count I should not be dismissed.

### F. Count II Is Not Subject to Dismissal as Duplicative.

Count II is pleaded against Huff alone and rests on his fabrication of evidence. ECF 13 ¶¶ 51–56. Rule 8(d)(2) permits a party to set out alternative statements of a claim, and Defendants identify no rule authorizing dismissal of a well-pleaded count because it overlaps another. Defendants alternatively ask that Count II be analyzed under the same framework as Count III. ECF 16 at 12. Plaintiffs do not object to the

Court analyzing the two counts together. Under that framework, Count II survives for the reasons stated in Parts II.A through II.C and III.

## III. The Felony Charges Terminated in Beach's Favor.

### A. Under Thompson and Laskar, the Question Is Whether the Charges That Justified the Seizure Ended Without a Conviction.

"To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." Thompson v. Clark, 596 U.S. 36, 39 (2022). In this Circuit, the favorable termination inquiry is charge specific. The favorable termination element "requires only that the criminal proceedings against the plaintiff formally end in a manner not inconsistent with his innocence on at least one charge that authorized his confinement." Laskar v. Hurd, 972 F.3d 1278, 1295 (11th Cir. 2020). A formal end to proceedings satisfies that standard "unless it precludes any finding that the plaintiff was innocent of the charges that justified his seizure, which occurs only when the prosecution ends in the plaintiff's conviction on or admission of guilt to each charge that justified his seizure." Id. This follows from the nature of the claim: its validity "depends on whether the seizure was justified, not whether the prosecution itself was justified." Id. at 1292.

### B. Beach Was Never Convicted of, and Never Admitted, Either Charge That Justified His Seizure.

The state court records Defendants submitted establish the dispositive facts. The capias that authorized Beach's arrest identified two charges and only two: § 914.23 and § 838.021, each a third-degree felony with a $10,000 bond. Ex. 5 at 5. Those are the charges that justified the seizure.

Plaintiffs acknowledge that the Second Amended Information filed on December 3, 2024, still recited the two felony counts, and that paragraph 40 of the Complaint describes that filing imprecisely. Ex. 5 at 8–9. The point does not change the analysis. What ended the felony charges was the plea colloquy that followed, at which the charges were converted by hand on a county court plea form to two counts of "Resisting w/o Violence (F.S. 843.02)," a first-degree misdemeanor. Ex. 5 at 11. The clerk's docket reflects that each felony was disposed of not by any finding on § 914.23 or § 838.021, but by an adjudication withheld on § 843.02. Ex. 5 at 1. Defendants agree that no information ever charged a violation of § 843.02. ECF 16 at 23.

Under Laskar, that is a favorable termination. Beach was not convicted of § 914.23 or § 838.021. He did not admit guilt to either; a plea of nolo contendere is not an admission, and it was entered to a different offense. And the offense to which he pleaded did not justify his seizure: no capias or warrant ever issued for resisting without violence, and the elements of that offense, resisting or obstructing an officer

in the lawful execution of a legal duty, § 843.02, Fla. Stat., share nothing with threatening a public servant or retaliating against a witness. Beach's prosecution on the charges that justified his seizure "ended without a conviction." Thompson, 596 U.S. at 39.

### C. Defendants' Contrary Authorities Do Not Apply.

Defendants first invoke the definition of "conviction" in § 960.291(3), Florida Statutes. ECF 16 at 23. That definition applies "[w]hen used in this act," the civil restitution lien provisions of chapter 960. § 960.291, Fla. Stat. It has nothing to do with a Fourth Amendment claim, which is governed by federal law and the common law as of 1871, not by the law of the forum state. Thompson, 596 U.S. at 39; Laskar, 972 F.3d at 1292; see also Luke v. Gulley, 50 F.4th 90, 97 (11th Cir. 2022) (district court errs when it relies on modern tort law or the law of the forum state to resolve a claim of unreasonable seizure pursuant to legal process).

Defendants' remaining authorities are unreported district court orders, two of which predate both Thompson and Laskar. ECF 16 at 23–24. As Defendants describe them, each treated a plea to a lesser offense as disposing of the whole prosecution, without analyzing whether the plea charge was one that justified the plaintiff's seizure. The charge-specific rule of Laskar, which binds this Court, requires that analysis, and the analysis favors Beach.

## IV. The State Law Claims Should Not Be Dismissed.

### A. Section 768.28(9)(a) Does Not Bar Counts V Through VIII.

Section 768.28(9)(a) withdraws an officer's personal immunity where the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat. Plaintiffs agree that Defendants acted within the scope of their employment; the claims proceed under the statute's express exception.

The Complaint pleads facts, not labels, showing bad faith and malicious purpose: a fabricated accusation of criminal threats, reduced to writing for the first time eleven months later and thirteen days after the plaintiff exposed the reporting officer's own sustained finding for omitting material facts; a prior written warning, in response to a protected complaint, that "false accusations against FWC officers would not be tolerated"; omission of the facts that would have revealed the timing and motive; and a request for internet and social media restrictions targeted at the very speech that exposed Huff. ECF 13 ¶¶ 3–5, 23, 25–31, 36–39. At summary judgment, the Eleventh Circuit held that evidence an officer fabricated critical parts of a report on which the State Attorney relied in deciding to prosecute would permit a jury to find that the officer "acted willfully or with malice," precluding immunity under § 768.28(9)(a). Claridy v. Golub, 632 F. App'x 565, 571–72 (11th Cir. 2015) (citing authority that a person who reports a crime acts maliciously when he knows

the report is false or recklessly disregards whether it is false). If evidence of that conduct creates a jury question on immunity at summary judgment, well-pleaded allegations of the same conduct necessarily survive a motion to dismiss. The Florida Supreme Court has likewise held that legal malice may be inferred from a lack of probable cause, and it left malice to the jury where there was evidence that the defendant's employees "intentionally provided false information to authorities." Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1357 (Fla. 1994). Knowingly fabricating evidence to cause a citizen's felony arrest is the definition of bad faith.

Defendants argue that the Complaint does not allege that Huff's report included statements Beach never made. ECF 16 at 29. That is not the theory, and Defendants acknowledge as much: they recognize that the Complaint alleges the fabrication was Huff's characterization of Beach's statements as criminal threats, made for the first time in the May 2024 report. Id. at 30. The Complaint alleges that Huff knowingly and falsely asserted that Beach made criminal threats, that the characterization was manufactured to support felony process, and that it was material to the charges. ECF 13 ¶¶ 3, 29, 31, 52–53. That is not the generalized allegation found insufficient in Gill; it identifies the specific accusation, the report in which it was made, the date, and the facts showing motive and timing. 941 F.3d at 514–15. As to Vazquez, the Complaint alleges his participation in a coordinated submission (ECF 13 ¶¶ 1, 28, 73) and his prior threat to make things "hard" on Beach if he did

not confess (ECF 13 ¶ 18). Whether Vazquez acted with the requisite state of mind is a fact question not suited to resolution on the pleadings.

### B. Count V States a Claim for Malicious Prosecution Under Florida Law.

Florida's elements are familiar: commencement of a proceeding, legal causation by the defendant, bona fide termination in the plaintiff's favor, absence of probable cause, malice, and damages. Alamo, 632 So. 2d at 1355. Defendants challenge only termination. ECF 16 at 24.

The bona fide character of a termination is ordinarily a question of fact that depends on the circumstances surrounding it. In Alamo, the Florida Supreme Court held that even a negotiated nolle prosequi does not automatically defeat the claim, because "bargaining or negotiating, in and of itself, does not always negate the bona fide nature of the termination," and "only after considering the circumstances surrounding the nol pros could the trier of fact determine whether the nol pros . . . was bona fide." 632 So. 2d at 1356. The circumstances here cannot be resolved against Beach on the pleadings. The felony charges were never adjudicated. Beach pleaded nolo contendere, on the day of trial, to a misdemeanor that no charging document ever alleged and that bears no factual relationship to the felony accusations. Ex. 5 at 1, 11. Florida's rule that conviction of a lesser included offense is not a favorable termination, see Fridovich v. Fridovich, 573 So. 2d 65, 71 (Fla. 4th DCA 1990), rev'd on other grounds, 598 So. 2d 65 (Fla. 1992), does not apply:

resisting without violence is not a lesser included offense of retaliating against a witness or corruption by threat, and Beach was not convicted of any offense included within the felonies. At a minimum, whether the abandonment of the felonies reflects on their merits is a fact question under Alamo.

**C. Count VI States a Claim for Abuse of Process.**

Abuse of process requires that (1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in doing so; and (3) the plaintiff was injured. Verdon v. Song, 251 So. 3d 256, 258 (Fla. 5th DCA 2018). The classic case uses a pending criminal prosecution as leverage to obtain a collateral advantage, and the plaintiff need not allege that the defendant expressly conditioned the prosecution on the collateral demand. Id. at 258–59.

The Complaint alleges that after the capias issued, Defendants, acting in concert with prosecuting authorities, used and maintained the pending process, specifically the nineteen-day total internet and social media ban, for the collateral purpose of stopping Beach's Inspector General complaints and public exposure of official misconduct. ECF 13 ¶¶ 7, 38–39, 79–81. The record supports the inference that the ban originated with Defendants: Huff's report complained that Beach had "used the social media platform to attack another member of our agency" and asked for "cyberstalk" charges, Ex. 4 at 5; the State Attorney's notes to the clerk then requested a capias with "no use of internet or social media," Ex. 4 at 2; and the State

Attorney confirmed that the restriction was deliberate and tied the prosecution to Beach's complaint activity. ECF 13 ¶ 38. Suppressing administrative complaints is not a legitimate object of a criminal prosecution for threats. Defendants' argument that Beach could still have complained by mail (ECF 16 at 32) goes to damages, not to whether process was perverted to a collateral end.

### D. Count VII States a Claim for Intentional Infliction of Emotional Distress.

Whether conduct may reasonably be regarded as outrageous is initially a question for the court. Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278–79 (Fla. 1985). Florida courts have held that fabricating accusations to law enforcement in order to procure a criminal prosecution states a claim at the pleading stage, and that outrageousness "is more likely to be found where some relationship exists that gives the defendant actual or apparent authority over another or power to affect his interests." Fridovich, 573 So. 2d at 72 (quotation omitted). A sworn law enforcement captain who manufactures a criminal threat accusation eleven months after the fact to cause a citizen's felony arrest by federal marshals, in retaliation for the citizen's exposure of the captain's own misconduct, has abused exactly that kind of authority. ECF 13 ¶¶ 85–88. The unreported decisions Defendants cite (ECF 16 at 33) did not involve a fabricated felony accusation by an officer retaliating against a critic, and they do not establish that such conduct is tolerable as a matter of law.

### E. Count VIII Survives Because the Underlying Claims Survive.

Defendants' only argument against Shawna Beach's loss of consortium claim is that it is derivative. ECF 16 at 33–34. Plaintiffs agree that the claim is derivative. Gates v. Foley, 247 So. 2d 40, 45 (Fla. 1971). Because Counts V through VII survive, so does Count VIII.

## V. Count IV States a Claim Under the Driver's Privacy Protection Act.

The DPPA imposes liability on a person who "knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter." 18 U.S.C. § 2724(a). Plaintiffs accept that they bear the burden of establishing an impermissible purpose. Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A., 525 F.3d 1107, 1111–14 (11th Cir. 2008). But at the pleading stage, purpose is a fact that may be alleged generally and inferred from circumstances. The governmental-function exception covers use by a law enforcement agency "in carrying out its functions." 18 U.S.C. § 2721(b)(1). It does not cover an officer's personal or retaliatory purposes merely because the officer is employed by a law enforcement agency. The question is the use to which the information was actually put, and courts have held that circumstantial allegations about the timing, scope, and context of database queries plausibly allege an

impermissible purpose. Mallak v. Aitkin County, 9 F. Supp. 3d 1046, 1057–58 (D. Minn. 2014).

The Complaint alleges that the November 7, 2022 queries were run the same day Beach submitted a public records request concerning Vazquez's investigation; that they retrieved not only identifying information but Shawna Beach's photographic identification and signature array and her scanned driver's license document; that Vazquez had already told Beach that if he did not confess, Vazquez would "make this hard on" him; and that there was no legitimate investigative purpose for obtaining those materials. ECF 13 ¶¶ 18, 20–21, 68–69. A photograph is "highly restricted personal information" under the Act, 18 U.S.C. §§ 2721(a)(2), 2725(4), and the circumstances alleged make it plausible that it was obtained for retaliation against a records requester rather than for an agency function. Defendants' alternative explanation (ECF 16 at 25–26) may be argued to the jury; it is not a basis for dismissal. Plaintiffs do not assert Count IV against Vazquez based on the May 23, 2024 queries described in paragraph 37, which are pleaded as context.

**VI. Dismissal With Prejudice Is Unwarranted.**

Leave to amend should be freely given absent undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or futility. Foman v. Davis, 371 U.S. 178, 182 (1962). None of those circumstances

exists. Plaintiffs amended once as a matter of course, before any ruling; no court has yet identified a deficiency for Plaintiffs to cure. Should the Court find any count insufficiently pleaded, Plaintiffs can allege additional facts, including the State's enlargement of the charged period to reach the May 26, 2023 call, the sworn-testimony certification in the Information, the origin of the internet ban in Huff's report, and the facts concerning Vazquez's participation in the joint submission. Plaintiffs respectfully request that any dismissal be without prejudice and with leave to file a Second Amended Complaint, and will promptly move for leave with a proposed pleading as required by the Local Rules.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny the Individual Defendants' Motion to Dismiss (ECF 16) in its entirety, or, alternatively, that any dismissal be without prejudice and with leave to amend.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
marie@mattoxlaw.com

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this response complies with the word limit of N.D. Fla. Loc. R. 7.1(F) and contains 6,571 words, including headings, footnotes, and quotations, but excluding the case style, signature block, and certificates.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of October 2026, a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will serve a copy on all counsel of record.

/s/ Marie A. Mattox
Marie A. Mattox